USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/21/2025

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------X

WESTFAIR LLC,

                              Plaintiff,

               -vs-

KAREN PUPOVIC and ISMET PUPOVIC,

                            Defendants.

-------------------------------------------------------------------X

Civ. A. No. 7:24-cv-5879-NSR

**ORDER TO SHOW CAUSE**
**FOR PRELIMINARY**
**INJUNCTION AND**
**TEMPORARY**
**RESTRAINING ORDER**

*(Sidebar text, vertical:)* MEMO ENDORSED

**UPON** the annexed Affidavit of the Plaintiff, by GIANNI ZUNIO, sworn to the 1st day of August, 2024, upon the Declaration of JONATHAN E. NEUMAN, ESQ., attorney for Plaintiff, dated November 11, 2024, and upon all the prior papers and proceedings heretofore had herein, it is

**ORDERED**, that Defendants KAREN PUPOVIC and ISMET PUPOVIC show cause before a motion term of this Court, at Room _____, United States Courthouse, 300 Quarropas St., in the City of White Plains, County of Westchester and State of New York, on _____, 2024, at _____ o'clock in the _____noon thereof, or as soon thereafter as counsel may be heard, why an order should not be issued pursuant to Rule 65 of the Federal Rules of Civil Procedure enjoining Defendants KAREN PUPOVIC and ISMET PUPOVIC during the pendency of this action from filing any *lis pendens* against the real property with an address of 101 Northwood Drive, Easton, CT 06612, or otherwise trying to cloud title or interfere with such property's sale; and it is further

**ORDERED** that, sufficient reason having been shown therefor, pending the hearing of Plaintiff's application for a preliminary injunction, pursuant to Rule 65, Fed. R. Civ. P., Defendants are directed to withdraw their *lis pendens* and the Town Clerk for the Town of Easton, CT is

directed to vacate and remove the *lis pendens* from the land records for the real property with an address of 101 Northwood Drive, Easton, CT 06612; and it is further

**ORDERED** that security in the amount of $_____ be posted by the plaintiff prior to _____, 2024, at _____ o'clock in the _____noon of that day; and it is further

**ORDERED** that service of a copy of this order and the supporting documents upon which it is based upon Defendants KAREN PUPOVIC and ISMET PUPOVIC, via _____ on or before _____ o'clock in the _____noon, _____, 2024, shall be deemed good and sufficient service thereof.

Dated: New York, New York

Issued: _____

**UNSIGNED**

_____
United States District Judge

**The Court is in receipt of Plaintiff's motion for a temporary restraining order (TRO). The Court STAYS Plaintiff's application pending the resolution of the briefing schedule that the Court set earlier today, February 21, 2025. The Clerk of Court is directed to terminate the motion at ECF No. 16.**

**Dated: February 21, 2025**
**White Plains, NY**

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X

WESTFAIR LLC,

                                 Plaintiff,                 Civ. A. No. 7:24-cv-5879-NSR

                     -against-

KAREN PUPOVIC and ISMET PUPOVIC,

                                 Defendants.

---------------------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION

## FOR A PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER

Jonathan E. Neuman, Esq.
176-25 Union Turnpike, Suite 230
Fresh Meadows, NY 11366
(347) 450-6710
(718) 228-3689 *facsimile*
jnesq@jenesqlaw.com

*Attorney for Plaintiff*

September 6, 2024

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..............................................................................1

STATEMENT OF FACTS ...................................................................................1

STANDARDS APPLICABLE ...............................................................................3

ARGUMENT ...................................................................................................4

I.    PLAINTIFF SATISFIES THE GROUNDS FOR A PRELIMINARY INJUNCTION
      AND A TEMPORARY RESTRAINING ORDER .....................................................4

II.   PLAINTIFF DOES NOT NEED TO EXHAUST REMEDIES IN STATE COURT
      IN ORDER TO BRING THIS ACTION ...............................................................10

CONCLUSION ..............................................................................................16

# TABLE OF AUTHORITIES

**CASES**                                                    **Page(s)**

725 Eatery Corp. v. City of N.Y., 408 F. Supp. 3d 424, 459 (S.D.N.Y. 2019) .................4

AFA Dispensing Grp. B.V. v. Anheuser-Busch, Inc.,

    740 F. Supp. 2d 465, 471 (S.D.N.Y. 2010) ...................................................3

Benihana, Inc. v. Benihana of Tokyo, LLC, 784 F.3d 887, 895 (2d Cir. 2015).................3

Blitman Constr. Corp. v. Denbel Realty & Constr. Co.,

    13 Misc. 2d 888 (Sup. Ct. NY Cty 1958) ..................................................6,7

C.R. Corps v. LaSalle, 2024 U.S. Dist. LEXIS 130163 (S.D.N.Y. July 22, 2024)..........11

Ciambriello v. County of Nassau, 292 F.3d 307, 323 (2d Cir. 2002)...............................11

Cnty. of Nassau, N.Y. v. Leavitt, 524 F.3d 408, 414 (2d Cir. 2008) .................................3

Dwares v. City of New York, 985 F.2d 94, 98 (2d Cir. 1993) ..........................................11

Faiveley Transp. Malmo AB v. Wabtec Corp., 559 F.3d 110, 118 (2d Cir. 2009) ...........3

Garcia v. Brooks St. Assocs., 209 Conn. 15, 22, 546 A.2d 275, 278 (1988) .....................6

Grand River Enter. Six Nations, Ltd v. Pryor, 481 F.3d 60,66 (2d Cir. 2007) ..................3

Haymount Urgent Care PC v. GoFund Advance, LLC,

    609 F. Supp. 3d 237 (S.D.N.Y. 2022)...................................................12,13

Heck v. Humphrey, 512 U. S. 477, 480, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994) .......10

Hercules Chem. Co. v. VCI, Inc., 118 Misc. 2d 814 (Sup. Ct. NY Cty 1983)................7,8

Kiss v. Torres, 2024 U.S. Dist. LEXIS 50637 (S.D.N.Y. Mar. 19, 2024)........................11

Knick v. Twp. of Scott, 588 U.S. 180, 185, 139 S. Ct. 2162, 2167 (2019) ......................10

Pakdel v. City & Cty. of S.F., 594 U.S. 474, 475, 141 S. Ct. 2226, 2228 (2021) .............10

Patsy v. Board of Regents of Fla., 457 U. S. 496, 501, 102 S. Ct. 2557 (1982)...........10,11

Pinsky v. Duncan, 79 F.3d 306 (2d Cir. 1996) ...................................................................13

**Statutory Provisions:**

42 U.S.C.S. §1983...............................................................................................................14

Conn. Gen. Stat. §52-325...............................................................................................4,5,6

Conn. Gen. Stat. §52-325d...............................................................................................14

Fed. R. Civ. Proc. R. 65(b) ..................................................................................................2

Plaintiff respectfully submits this Memorandum of Law in support of its motion for a preliminary injunction and a temporary restraining order:

## PRELIMINARY STATEMENT

Plaintiff is in need of a preliminary injunction and immediate temporary restraining order, as Defendants' bad faith actions have caused Plaintiff to face immediate, irreparable harm. As Plaintiff can demonstrate an irreparable harm in the absence of the injunction and either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor, it is respectfully submitted that the Court should grant a preliminary injunction and temporary restraining order, specifically granting Plaintiff a temporary restraining order directing Defendants to withdraw their *lis pendens* and directing the Town Clerk for the Town of Easton, CT to expunge and remove the *lis pendens*, and a preliminary injunction enjoining Defendants from filing any future *lis pendens* against the property or otherwise trying to cloud title or interfere with the property's sale during the pendency of this case.

## STATEMENT OF FACTS

Plaintiff respectfully refers the Court to the Complaint and accompanying Declaration from Plaintiff.  In short, as is relevant to this motion, Plaintiff is the owner of a piece of real property that Plaintiff acquired in November 2023 from a third party (Redemption, LLC) who acquired it from another third party, Diamond Tucker St Property, LLC.  At the time Plaintiff acquired the property, there was no notice, constructive or actual, that any party had any claim or interest in the property.

Defendants have apparently been involved in a dispute with Diamond Tucker St

Property, LLC over a $90,000 deposit, stemming from a contemplated real estate transaction involving the property that failed to close in March 2022.  Despite litigation in which Defendants never claimed any rights or interest in the property, and moreover, Defendants' express declaration in March 2022 that the agreement was terminated with no claim or interest to the property, Defendants have now sued Diamond, Redemption, and Plaintiff, alleging that Defendants either have a judgment (which they don't) or are seeking a judgment against Diamond, and that therefore they are entitled to potentially undo the transfer to the extent necessary to satisfy their nonexistent judgment that they might one day obtain in the future.  On that basis, Defendants have also filed a *lis pendens* against the property, even though they have no rights to, nor interest in, nor legitimate claim to, the property.

Although Plaintiff attempted to dissolve the *lis pendens* in Connecticut, Defendants have delayed the process through the filing of a motion to dismiss, which the Connecticut court granted on procedural grounds with leave to re-file.  Thus, to even obtain relief in Connecticut, Plaintiff would have to begin a new action/proceeding.  Because there is no personal jurisdiction over Defendants in Connecticut as Defendants are New York residents, Plaintiff has now come to this Court to resolve the controversy.

As shown below, Defendants clearly have no right to assert a *lis pendens* against the property.  Defendants' malicious assertion of a *lis pendens* has accomplished its goal of preventing Plaintiff from being able to market the property for sale.  As the real estate market is fickle, matters involving real estate have always been considered matters that create irreparable harm.  Unless the Court grants the requested injunctive relief to stop this clearly improper *lis pendens*, Plaintiff will continue to suffer irreparable harm.

## **STANDARDS APPLICABLE**

Rule 65(b) of the Federal Rules of Civil Procedure authorizes a court to issue a TRO. The standards for granting a TRO are the same as those governing preliminary injunctions. AFA Dispensing Grp. B.V. v. Anheuser-Busch, Inc., 740 F. Supp. 2d 465, 471 (S.D.N.Y. 2010). To be entitled to a Temporary Restraining Order in this Circuit, a party must demonstrate: "(1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." Cnty. of Nassau, N.Y. v. Leavitt, 524 F.3d 408, 414 (2d Cir. 2008). "A party seeking a preliminary injunction must demonstrate: (1) 'a likelihood of success on the merits or . . . sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor'; (2) a likelihood of 'irreparable injury in the absence of an injunction'; (3) that 'the balance of hardships tips in the plaintiff's favor'; and (4) that the 'public interest would not be disserved' by the issuance of an injunction. Benihana, Inc. v. Benihana of Tokyo, LLC, 784 F.3d 887, 895 (2d Cir. 2015) (ellipsis in original). Of these factors, "[a] showing of irreparable harm is 'the single most important prerequisite for the issuance of a preliminary injunction." Faiveley Transp. Malmo AB v. Wabtec Corp., 559 F.3d 110, 118 (2d Cir. 2009) (internal quotation marks omitted). "To satisfy the irreparable harm requirement, Plaintiffs must demonstrate that absent a preliminary injunction they will suffer 'an injury that is neither remote nor speculative, but actual and imminent,' and one that cannot be remedied 'if a court waits until the end of trial to resolve the harm.'" Grand River Enter. Six Nations, Ltd v. Pryor, 481 F.3d 60, 66 (2d Cir. 2007).

## ARGUMENT

## I.    PLAINTIFF SATISFIES THE GROUNDS FOR A PRELIMINARY INJUNCTION AND A TEMPORARY RESTRAINING ORDER

As shown in Plaintiff's Complaint, and discussed in Plaintiff's accompanying Declaration, the Defendants' bad faith and improper actions have actively prevented Plaintiff from being able to sell its property in a hot market for nearly a year now.  Accordingly, Plaintiff is in need of a preliminary injunction, and a temporary restraining order pending the determination of the motion, to prevent Defendants' bad faith actions from irreparably losing Plaintiff the ability to capitalize on its real estate.

Here a preliminary injunction and temporary restraining order should be granted.

First, Plaintiff can demonstrate a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation.  "Plaintiffs need not demonstrate a likelihood of success on the merits of every claim—rather, they need only 'show a likelihood of success on the merits of at least one of [their] claims.'"  725 Eatery Corp. v. City of N.Y., 408 F. Supp. 3d 424, 459 (S.D.N.Y. 2019) (brackets in original).

At the outset, Plaintiffs can clearly demonstrate a likelihood of success on the merits.

Conn. Gen. Stat. §52-325, Connecticut's lis pendens statute, provides as follows:

Sec. 52-325. Notice of lis pendens. (a) In any action in a court of this state or in a court of the United States (1) the plaintiff or his attorney, at the time the action is commenced or afterwards, or (2) a defendant, when he sets up an affirmative cause of action in his answer and demands substantive relief at the time the answer is filed, if the action is intended to affect real property, may cause to be recorded in the office of the town clerk of each town in which the property is situated a notice of lis pendens, containing the names of the parties, the nature and object of the action, the court to which it is returnable and the term, session or return day thereof, the date of the process and the description of the property, except that no such notice may be recorded in an action that alleges an illegal, invalid or defective transfer of an interest in real property unless the complaint or affirmative cause of action contains the date of the initial illegal, invalid or defective transfer of an interest in real property and such transfer has occurred less than sixty years prior to the commencement of such action. Such notice shall, from the time of the recording

only, be notice to any person thereafter acquiring any interest in such property of the pendency of the action; and each person whose conveyance or encumbrance is subsequently executed or subsequently recorded or whose interest is thereafter obtained, by descent or otherwise, shall be deemed to be a subsequent purchaser or encumbrancer, and shall be bound by all proceedings taken after the recording of such notice, to the same extent as if he were made a party to the action. For the purpose of this section an action shall be deemed to be pending from the time of the recording of such notice; **provided such notice shall be of no avail unless service of the process is completed within the time provided by law**. This section shall be construed to apply to mechanics' liens and all other inchoate liens, certificates of which are recorded subsequent to the recording of the notice of the pendency of the action; and, in suits to foreclose mortgages or other liens, the persons whose conveyances or encumbrances are subsequently executed or subsequently recorded shall forfeit their rights thereunder, unless they apply to the court in which such action is brought to be made parties thereto, prior to the date when the judgment or decree in such action is rendered.

(b) As used in this section, **actions "intended to affect real property" means (1) actions whose object and purpose is to determine the title or rights of the parties in, to, under or over some particular real property; (2) actions whose object and purpose is to establish or enforce previously acquired interests in real property; (3) actions which may affect in any manner the title to or interest in real property, notwithstanding the main purpose of the action may be other than to affect the title of such real property.**

(c) Notwithstanding the provisions of subsection (a) of this section, in any action except a suit to foreclose a mortgage or other lien, **no recorded notice of lis pendens shall be valid or constitute constructive notice thereof unless the party recording such notice, not later than thirty days after such recording, serves a true and attested copy of the recorded notice of lis pendens upon the owner of record of the property affected thereby**. The notice shall be served upon the owner, if the owner resides in the same town in which the real property is located, by any proper officer or indifferent person, by leaving a true and attested copy of such recorded notice with the owner or at the owner's usual place of abode. If the property owner does not reside in such town, such copy may be served by any proper officer or indifferent person, by mailing such copy, by registered or certified mail, to the owner at the place where the owner resides. If such copy is returned unclaimed, notice to such property owner shall be given by publication in accordance with the provisions of section 1-2. If the property owner is a nonresident individual or foreign partnership, or the executor or administrator of the nonresident individual or foreign partnership, the notice may be served upon the Secretary of the State as provided in subsection (c) of section 52-59b and if the property owner is a foreign corporation, the notice may be served as provided in section 33-519 or 33-929. When there are two or more property owners of record, a true and attested copy of such recorded notice shall be so served on each property owner. A certified copy of the recorded notice of lis pendens, with the return of the person who served

it, endorsed thereon, shall be returned to the party who recorded the notice who shall file a copy of the return with the clerk of the court in which the action is brought. The clerk shall include the copy in the record.

(emphasis added).

The Connecticut Supreme Court has clearly stated the same. *See, e.g.*, Garcia v. Brooks St. Assocs., 209 Conn. 15, 22, 546 A.2d 275, 278 (1988) ("From the face of the statute it is clear that a notice of lis pendens is appropriate only where the pending action will in some way, either directly or indirectly, affect the title to or an interest in the real property itself. **Where, as here, a party to a pending action seeks only monetary damages that will not affect the title of the real estate owned by an adverse party, a notice of lis pendens is properly discharged** as it no longer serves its purpose, which is to put potential buyers of the real estate and creditors of its owners on notice that the real estate may be subject to pending adverse interests that may affect the title or right to the property.") (emphasis added) (internal citation omitted).

Thus, here, Plaintiff has a likelihood of success on two bases: 1) Defendants' cause of action is not a valid "action intended to affect real property," as it does not seek to determine the title or rights of the parties in, to, under or over some particular real property; seek to establish or enforce previously acquired interests in real property; or affect in any manner the title to or interest in real property; but rather seeks to preliminarily attach the property pre-judgment for theoretical judgment enforcement purposes based on a purported claim against a prior owner; 2) no recorded notice was served upon Plaintiff within 30 days, and thus the *lis pendens* is invalid as a matter of law.

Thus, Plaintiff can demonstrate a likelihood of success on at least one claim.

With regard to the prospect of irreparable injury, this too can be demonstrated.  It has long been the case can an invalid *lis pendens* constitutes irreparable harm. *See, e.g.*, Blitman

Constr. Corp. v. Denbel Realty & Constr. Co., 13 Misc. 2d 888, 889-90, 178 N.Y.S.2d 249, 250-

51 (Sup. Ct. NY Cty 1958):

> Section 120 of the Civil Practice Act provides that a *lis pendens* may be filed "In
> an action brought to recover a judgment affecting the title to, or the possession, use,
> or enjoyment of real property". Exhibit "A" -- the basis of this action, clearly
> discloses that it is one for services to be rendered in connection with the
> construction and erection of buildings and not one for recovery of a judgment
> affecting title to or the possession, use or enjoyment of real property. "It is not the
> title of the action nor the prayer for judgment, but the facts set out in the complaint,
> which determine the kind and character of action. The action cannot be made an
> equitable one by the demand for relief if no facts are stated in the complaint which
> would justify equitable relief."
>
> Since the order to show cause for an order canceling the notice of pendency and
> dismissing the first cause of action set forth in plaintiff's complaint was served, the
> plaintiff served an amended complaint upon defendants. Plaintiff accordingly
> contends that the present application became moot and academic.
>
> The amended complaint has as its first cause of action the identical first cause of
> action in the original complaint. The amended complaint merely adds additional
> causes of action, but all are based upon the contract between plaintiff and Denbel,
> Exhibit "A". Counsel for defendants ask the court to consider this amended
> complaint in its decision of this motion. The *lis pendens* is intended to encompass
> the amended complaint. Therefore I consider it proper to have my decision
> encompass the amended complaint. **Otherwise, by manipulation and the resort
> to dilatory tactics, it would endlessly prevent a final determination as to
> whether this *lis pendens* should be revoked. Irreparable harm would result to
> the defendants if same is not determined promptly, as it is prevented from
> withdrawing funds from the construction mortgage, to proceed with the
> erection of this building, unless said notice is removed from record.** Since this
> is an equity proceeding, equity demands that justice be done.

(emphasis added) (internal citations omitted).  In fact, the Supreme Court of Connecticut long

ago determined that the filing of a *lis pendens* implicates substantial due process concerns.  *See,*

*e.g.,* Hercules Chem. Co. v. VCI, Inc., 118 Misc. 2d 814, 823-25, 462 N.Y.S.2d 129, 135-37

(Sup. Ct. NY Cty 1983):

> The Supreme Court has explicitly recognized that, "among the civil rights intended
> to be protected * * * by the Fourteenth Amendment are the rights to acquire, enjoy,
> own and *dispose* of property." ( *Shelley v Kraemer*, 334 U.S. 1, 10; emphasis
> added.) As the facts in this case demonstrate the filing of a notice of pendency

clearly **interferes with the owner's ability to sell the subject property**. While this imposition may not amount to the taking of a "significant property interest", **I am convinced that the interference is sufficient to trigger the constitutional requirements of due process.**

Other courts have reached the same conclusion. Examining the constitutionality of New Jersey's *lis pendens* statute, the United States Court of Appeals in *Chrysler Corp. v Fedders Corp*. (670 F2d 1316, 1324-1325, *supra*), found "**that the degree of deprivation caused by a filing of a notice of lis pendens warrants reaching the due process issue**." In reaching this conclusion the court distinguished those cases which have held that a mechanic's lien does not result in the taking of a "significant property interest".

Comparing a notice of pendency and a mechanic's lien the court stated: "there is a significant distinction between the situation in which a mechanic's lien is filed and that where a lis pendens is filed. It may be possible to view the restriction on alienability caused by a mechanic's lien . . . as one consented to by the debtor. Certainly it may be viewed as one bargained for between the parties. The labor or materials which are the subject of the lien have presumably enhanced the value of the property. In return, the property owner was aware that nonpayment would subject it to a mechanic's lien, but also that any claim must be filed and suit begun within a limited period of time after the provision of the work or materials. Thus different equities and considerations inhere in the mechanic's lien situation." (See Comment, Does California's Statutory Lis Pendens Violate Procedural Due Process?, 6 Pac LJ 62, 67.) **A notice of pendency attaches a conflicting claim to a property owner's title, diminishing the owner's power of conveyance. Several State and Federal courts have recognized the severity of the consequences resulting from a similar encumbrance upon a property owner's title** (see, e.g., Barry 353, 222, 228 [1976, mechanic's lien]; *Terranova v Avco Fin. Servs. of Barre*, 396 F Supp 1402, 1406 [attachment of real property]; *Clement v Four North State St. Corp*., 360 F Supp 933, 935 [attachment of real property]). **At least one other State court, the Supreme Court of Connecticut, has held that the filing of a *lis pendens* is a sufficient interference with property and the defendant to require the protection of the Fourteenth Amendment.** ( *Kukanskis v Griffith*, 180 Conn 501.)

Having found that due process is required, the question remains, what process is due? Clearly, the greater the taking, or interference with significant rights, the more procedural protections must be accorded. Conversely, as in *Mitchell v W. T. Grant Co*. (416 U.S. 600, *supra*), a more limited taking requires fewer procedural safeguards.  The applicable test is found in *Matthews v Eldridge* (424 U.S. 319, 335) where the court wrote: "[Identification] of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's

interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

> **Here, the "private interest" in conveyance of real property, discussed *supra*, is encumbered, for up to three years, by virtue of the nonjudicially supervised filing of a notice based on an entirely conclusory claim that the filing of plaintiff's action is one "affecting" the owner's subject property. The risk of an erroneous deprivation is substantial**; clearly, a large number of plaintiffs who have filed *lis pendens* do not ultimately prevail on their underlying actions; **further, the ability to encumber property for substantial periods of time without judicial scrutiny creates the potential for unscrupulous plaintiffs with spurious claims to "hold up" owners, or to force settlements because their unfounded claims remain unexamined**.

(emphasis added). Thus, it is clear, as the Supreme Court of the United States has recognized and as the Supreme Court of Connecticut has recognized, the ability to dispose of one's property is a constitutional right guaranteed by the Fourteenth Amendment, and the interference with that right is an irreparable harm.

With respect to the balance of the equities, this too tips in favor of Plaintiff. Plaintiff is the property owner who has the right to sell its property. If the *lis pendens* is not removed, Plaintiff may lose the available market to sell that property. Defendants, on the other hand, are merely seeking a money judgment against a third-party, and Defendants can always seek to enforce any theoretical judgment against that third-party's assets, just as with every other judgment holder. Moreover, Defendants officially and explicitly terminated their agreement with Diamond and disclaimed any rights to the property, and then never asserted any rights to the property notwithstanding a litigation with Diamond in March 2022. Thus, the equities clearly tip in Plaintiff's favor.

And finally, the granting of the injunction expunging the improper *lis pendens* and preventing any future frivolous filing would also obviously serve the public interest, as it is in the public interest to be able to engage in real estate transactions without spurious *lis pendens* creating a potential cloud on title.

Accordingly, it is respectfully submitted that a temporary restraining order and preliminary injunction are patently warranted and should be granted.

## II.    PLAINTIFF DOES NOT NEED TO EXHAUST REMEDIES IN STATE COURT IN ORDER TO BRING THIS ACTION

As the Supreme Court reiterated just a few years ago, "the settled rule is that 'exhaustion of state remedies "is *not* a prerequisite to an action under [42 U. S. C.] §1983"'." Knick v. Twp. of Scott, 588 U.S. 180, 185, 139 S. Ct. 2162, 2167 (2019) (*quoting* Heck v. Humphrey, 512 U. S. 477, 480, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994) (*quoting* Patsy v. Board of Regents of Fla., 457 U. S. 496, 501, 102 S. Ct. 2557, 73 L. Ed. 2d 172 (1982)) (emphasis and brackets in original).  The Supreme Court reiterated this once again just two years later in Pakdel v. City & Cty. of S.F., 594 U.S. 474, 475, 141 S. Ct. 2226, 2228 (2021) ("In the decision below, however, the Ninth Circuit required petitioners to show not only that the San Francisco Department of Public Works had firmly rejected their request for a property-law exemption (which they did show), but *also* that they had complied with the agency's administrative procedures for seeking relief. **Because the latter requirement is at odds with 'the settled rule . . . that exhaustion of state remedies is *not* a prerequisite to an action under 42 U. S. C. §1983,'** *Knick* **v.** *Township of Scott***, 588 U. S. ___, ___, 139 S. Ct. 2162, 204 L. Ed. 2d 558, 567 (2019) (brackets and internal quotation marks omitted), we vacate and remand.**") (emphasis added; italics in original)

As the Supreme Court stated in Patsy v. Bd. of Regents, 457 U.S. 496, 500-01, 102 S. Ct. 2557, 2559-60 (1982):

> Beginning with *McNeese* v. *Board of Education*, 373 U.S. 668, 671-673 (1963), we have on numerous occasions rejected the argument that a § 1983 action should be dismissed where the plaintiff has not exhausted state administrative remedies. See *Barry* v. *Barchi*, 443 U.S. 55, 63, n. 10 (1979); *Gibson* v. *Berryhill*, 411 U.S.

564, 574 (1973); *Carter* v. *Stanton*, 405 U.S. 669, 671 (1972); *Wilwording* v. *Swenson*, 404 U.S. 249, 251 (1971); *Houghton* v. *Shafer*, 392 U.S. 639, 640 (1968); *King* v. *Smith*, 392 U.S. 309, 312, n. 4 (1968); *Damico* v. *California*, 389 U.S. 416 (1967). Cf. *Steffel* v. *Thompson*, 415 U.S. 452, 472-473 (1974) ("When federal claims are premised on [§ 1983] -- as they are here -- we have not required exhaustion of state judicial or administrative remedies, recognizing the paramount role Congress has assigned to the federal courts to protect constitutional rights"). Respondent may be correct in arguing that several of these decisions could have been based on traditional exceptions to the exhaustion doctrine. **Nevertheless, this Court has stated categorically that exhaustion is not a prerequisite to an action under § 1983, and we have not deviated from that position in the 19 years since *McNeese*.**

(emphasis added) (brackets in original).  *See also* <u>C.R. Corps v. LaSalle</u>, 2024 U.S. Dist. LEXIS 130163, at *38 (S.D.N.Y. July 22, 2024) ("It is well-established that exhaustion of remedies under state law is not required to make a Section 1983 claim ripe.  Section 1983 provides 'dual or concurrent forums in the state and federal system, enabling the plaintiff to choose the forum in which to seek relief.'") (internal citations omitted); <u>Kiss v. Torres</u>, No. 21-CV-10391 (KMK), 2024 U.S. Dist. LEXIS 50637, at *35 n.24 (S.D.N.Y. Mar. 19, 2024) ("'exhaustion of state remedies 'is *not* a prerequisite to an action under § 1983.' Thus, Plaintiff's failure to take advantage of available post-deprivation remedies as discussed herein 'does not impose a procedural bar.'") (internal citations omitted).

Thus, it is clear that a Section 1983 plaintiff does not need to exhaust any available state court remedies before filing in federal court.  In order to state a claim under Section 1983, a plaintiff must allege that he was injured by "either a state actor or a private party acting under color of state law," <u>Ciambriello v. County of Nassau</u>, 292 F.3d 307, 323 (2d Cir. 2002), and that such conduct deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States, <u>Dwares v. City of New York</u>, 985 F.2d 94, 98 (2d Cir. 1993).

Here Plaintiff has properly asserted a Section 1983 action.  Although Defendants are private parties, this Court recently issued a decision regarding another Connecticut prejudgment

attachment statute, in which the Court concluded that a Section 1983 claim could be viable

against private parties in such circumstances.  In Haymount Urgent Care PC v. GoFund

Advance, LLC, 609 F. Supp. 3d 237, 251-52 (S.D.N.Y. 2022), the plaintiffs alleged that the

defendants had violated their constitutional right to due process while acting under color of

Connecticut state law, all in violation of 42 U.S.C. § 1983, because the defendants had their

attorneys issue prejudgment writs of attachment on the plaintiffs' bank and medical insurance

reimbursement accounts pursuant to Conn. Gen. Stat. Ann. § 52-278f, but had failed to adhere to

the statutory requirements for use of this prejudgment remedy, as they had failed to provide

notice and opportunity for hearing as required by the statute.  Denying the defendants' motion to

dismiss, this Court held that the defendants' failure to follow the statute's procedural requirement

of providing notice sufficiently stated a Section 1983 cause of action.

     With respect to the fact that the defendants were private actors, the Court stated as

follows:

> Although they are private parties, defendants do not challenge that the Complaint
> adequately alleges that they acted "under color of state law" and with a sufficient
> nexus to state action in their allegedly unlawful use of the prejudgment attachment
> statute. In any event, the Supreme Court has repeatedly explained that section 1983
> liability may lie for either abusive use of a prejudgment attachment statute or
> knowing or reckless use of an unconstitutional prejudgment remedy where the
> alleged deprivation was caused by the exercise of a power created by the state and
> the party charged with the deprivation is a person who "he is a state official, because
> he has acted together with or has obtained significant aid from state officials, or
> because his conduct is otherwise chargeable to the State." *Lugar v. Edmondson Oil
> Co.*, 457 U.S. 922, 937, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982). *See also, e.g.,
> Connecticut v. Doehr*, 501 U.S. 1, 111 S. Ct. 2105, 115 L. Ed. 2d 1 (1991); *North
> Georgia Finishing, Inc. v. Di-Chem, Inc*., 419 U.S. 601, 95 S. Ct. 719, 42 L. Ed. 2d
> 751 (1975). Attorneys employing a confession of judgment statute to attach private
> property without notice or hearing may be treated as state actors, because they
> "enlist[] the compulsive powers of the state to seize property by executing on a
> judgment without pre-deprivation notice or hearing [and so they] act[] under color
> of law." *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1267 (3d Cir.
> 1994). Here, the writs of attachment purported to be issued in aid of a pending

lawsuit, and so the banks froze the plaintiffs' accounts because the writs purported to "use the state's power of legal compulsion to deprive another of property." Id.

Haymount, 609 F. Supp. 3d at 252 n.8.

And finally, addressing the defendants' argument that the plaintiffs had a remedy in state court to challenge the actions and therefore the federal action was improper, the Court held that "in any event, it is well established that litigants challenging an allegedly unconstitutional prejudgment remedy may seek relief in a federal court under section 1983, **even if there is a pending state court action associated with the prejudgment remedy**." Id. at 253-54 (emphasis added) (citing Pinsky v. Duncan, 79 F.3d 306 (2d Cir. 1996).

In Pinsky, the defendant had used Connecticut's prejudgment attachment statute as part of a pending lawsuit in state court. While that action was pending, the defendant then sued the plaintiff in federal court under 42 U.S.C. §1983, arguing that the prejudgment attachment without notice was an unconstitutional violation of due process and seeking, *inter alia*, injunctive and declaratory relief. The district court granted summary judgment for the defendants, who had argued that "the private interest at stake is so minuscule that a prior hearing is not constitutionally required." Pinsky, 79 F.3d at 309 (2d Cir. 1996). The Second Circuit disagreed, stating that "We are unpersuaded by this argument. An attachment can have a substantial impact **on a landowner's ability to sell his property, secure a loan**, or obtain credit. Given a particularly unlucky set of circumstances, even a temporary attachment can lead to foreclosure proceedings against the homeowner." Id. (emphasis added). The decision was then affirmed by the Supreme Court of the United States, which held that "the Due Process Clause of the Fourteenth Amendment was not satisfied by a state statute that permitted prejudgment attachment of real property without prior notice or hearing." Id. at 310.

Our case is strikingly similar to the above cases.  Here, the Defendants used a prejudgment attachment statute without the requisite statutory notice.  The Supreme Court of Connecticut has already declared that the filing of a *lis pendens* is a sufficient interference with property and the defendant to require the protection of the Fourteenth Amendment.  The Second Circuit has already declared that a *lis pendens*, which can have a substantial impact on a landowner's ability to sell his property, etc. (precisely the harm of which Plaintiff is complaining in this action), is of sufficient importance that it can create Section 1983 liability.  The Supreme Court has already stated that a prejudgment attachment without notice violates the Due Process Clause of the Fourteenth Amendment.  Thus, Defendants' abusive use of this prejudgment attachment statute, in violation of the statutory requirement to provide notice, clearly provides Plaintiff with a Section 1983 claim.

Accordingly, it is respectfully submitted that Plaintiff does not need to exhaust its remedies in state court before seeking relief in this Court.  As the Supreme Court has stated, as the Second Circuit has stated, and as this Court has stated, Plaintiff is allowed to choose this Court as its forum over the state court, and is not required to exhaust potential avenues of relief in state court before doing so, even if such potential state court remedies exist.  It is clear that, other than against "a judicial officer for an act or omission taken in such officer's judicial capacity," injunctive relief is available under Section 1983.  42 U.S.C.S. §1983.  Thus, Plaintiff's application for injunctive relief is clearly proper.

Moreover, the relief sought in this motion is broader than that that which exists under the state court remedy.  The only relief that exists under Conn. Gen. Stat. §52-325d for an improper *lis pendens* is an "order declaring that such notice of lis pendens is invalid and discharged, and that the same does not constitute constructive notice."  There is **no** provision for injunctive relief

within the Connecticut statutory scheme.  Here, however, Plaintiff seeks an injunction from the Court, enjoining Defendants during the pendency of this action from filing any *lis pendens* against the real property, or otherwise trying to cloud title or interfere with such property's sale. The Connecticut statute does not provide for any such relief.  There is nothing in the Connecticut statute that would stop the Defendants from simply re-filing a new *lis pendens*, which would then force Plaintiff to seek another discharge.  The process could then repeat *ad infinitum*.  Although such repeated filings would likely be sanctionable, there is nothing in the Connecticut statutory scheme that would stop Defendants from doing so.  Plaintiff would have to start a separate lawsuit to seek an injunction.  But that is precisely what Plaintiff is doing here (and moreover in Defendants' home state, so that there can be no argument regarding personal jurisdiction).

Accordingly, it is respectfully submitted that even putting aside the fact that Plaintiff is entitled to seek this relief in federal court notwithstanding any potential state-based relief and notwithstanding any pending state court action (as shown above), Plaintiff would not even be able to seek this relief in the (no-longer) pending state court action if it wanted to, since the Connecticut statutes do not provide for injunctive relief against an improper *lis pendens*, and provide for nothing more than a declaration of invalidity and discharge.  Thus, to seek the relief Plaintiff seeks in this motion, Plaintiff would have to start an entirely separate action seeking injunctive relief, which Plaintiff would not be able to obtain in the Conn. Gen. Stat. §52-325d proceeding.  But Plaintiff has already done precisely this in this action.

Accordingly, it is respectfully submitted that Plaintiff does not have to seek a brand-new lawsuit in state court to seek to obtain the relief sought herein, but rather can proceed within this action.

## **CONCLUSION**

For the reasons demonstrated above, it is respectfully submitted that the Court should grant a temporary restraining order directing Defendants to withdraw their *lis pendens* and directing the Town Clerk for the Town of Easton, CT to expunge and remove the *lis pendens* from the land records, and a preliminary injunction enjoining Defendants from filing any future *lis pendens* against the property or otherwise trying to cloud title or interfere with the property's sale; together with such other, further, and different relief as to this Court may be just and proper.

Dated: Fresh Meadows, New York
        September 6, 2024

                                    _____/Jonathan E. Neuman/_____
                                    JONATHAN E. NEUMAN, ESQ.
                                    *Attorney for Plaintiff*
                                    176-25 Union Turnpike, Suite 230
                                    Fresh Meadows, NY 11366
                                    (347) 450-6710
                                    (718) 228-3689 *facsimile*
                                    jnesq@jenesqlaw.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
WESTFAIR LLC,

                          Plaintiff,

            -vs-

KAREN PUPOVIC and ISMET PUPOVIC,

                        Defendants.
-------------------------------------------------------------------X

Case No.: 7:24-cv-5879-NSR

**DECLARATION IN SUPPORT
OF MOTION FOR TEMPORARY
RESTRAINING ORDER AND
PRELIMINARY INJUNCTION**

      I, JONATHAN E. NEUMAN, ESQ., declare pursuant to 28 U.S.C. §1746 as follows::

      1.      I am the attorney for the Plaintiff in the above-entitled action and am fully familiar with all of the facts and circumstances heretofore had herein.  I make this declaration in support of Plaintiff's instant motion for a preliminary injunction and for a temporary restraining order pending the determination of this motion.

      2.      A prior motion seeking this relief was filed with this Court on August 2, 2024.  On August 6, 2024, this Court denied the motion without prejudice to renew upon Plaintiff providing a thorough, legal analysis and basis for Plaintiff's inability to obtain the relief sought in this federal action in the pending state court proceeding.  The motion was re-filed on September 6, 2024, and again denied without prejudice to re-filing.  Since then, Plaintiff has served the Defendants with the Summons and Complaint, as well as a letter notifying them of the intent to file an application for a TRO and preliminary injunction.  The Summons, Complaint, and letter notifying of the intent to file for a TRO and preliminary injunction were all served personally upon the Defendants on October 4, 2024.  On October 29, 2024, Plaintiff obtained a Clerk's default (ECF Doc. 14) against Defendants.  Plaintiff intends to separately move for a default judgment, however, in the interim, until that motion can be heard by the Court, for the

reasons that have been set forth previously to this Court and in the accompanying supporting documentation, Plaintiff is in need of a TRO and preliminary injunction.

3.     Accordingly, for the reasons set forth in Plaintiff's accompanying Memorandum of Law, Plaintiff respectfully submits that it has demonstrated its right to make this application in this Court, as well as its inability to obtain the relief it seeks in the (no-longer) pending state court proceeding.  As an aside, the state court proceeding was dismissed on August 21, 2024, with leave to renew, based on procedural grounds due to Plaintiff's failure to provide certain evidence relating to its corporate existence, and the denial of Plaintiff's oral application for a continuance of the hearing so as to provide such evidence.  Accordingly, at this point in time, there is no pending state court action.

4.     As set forth in Plaintiff's accompanying declaration and as set forth more fully in the Complaint (annexed hereto as **EXHIBIT 1**), as a result of Defendants' improper actions, Plaintiff has been unable to market its property for over a year now.  As explained therein, absent intervention of this Court, Plaintiff will continue to suffer irreparable harm.

5.     Accordingly, Plaintiff is in need of immediate temporary relief, as well as a more permanent preliminary injunction during the pendency of this action.

6.     For the reasons set forth in the accompanying memorandum of law, it is respectfully submitted that Plaintiff has demonstrated a likelihood of success on the merits, a balance of the equities, and irreparable harm, as well as the public interest.

7.     As the *lis pendens* is clearly inappropriate, it is respectfully submitted that there is no need for any security, which would be counterintuitive to the very request being made in this motion.

This declaration is submitted pursuant to 28 U.S.C. §1746.  I declare under penalty of perjury that the foregoing is true and correct.


Executed on November 11, 2024 in Fresh Meadows, New York.

_____/s/ Jonathan E. Neuman_____
JONATHAN E. NEUMAN, ESQ.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
WESTFAIR LLC,

             Case No.: 7:24-cv-5879

        Plaintiff,

             **DECLARATION IN SUPPORT**

   -vs-

KAREN PUPOVIC and ISMET PUPOVIC,

        Defendants.
---------------------------------------------------------------------X

   I, GIANNI ZUNIO, declare pursuant to 28 U.S.C. § 1746 as follows:

  1. I am the manager for Plaintiff WESTFAIR LLC.  I make this declaration in support of Plaintiff's motion for a TRO and for injunctive relief.  I am fully familiar with all of the facts and circumstances relevant to a proper determination herein.

  2. As discussed in the Complaint (annexed hereto as **EXHIBIT 1**), which is incorporated by reference and adopted herein, in November 2023, Plaintiff purchased a piece of real property with an address of 101 Northwood Drive, Easton, CT 06612.  Title to the property was clean.

  3. Shortly thereafter, Plaintiff was named as a party to a lawsuit by Defendants (annexed hereto as **EXHIBIT 2**), which seems to claim that Defendants have some sort of money judgment, or are seeking a money judgment from a prior owner of the property.  Defendants also filed a *lis pendens* against the property (annexed hereto as **EXHIBIT 3**), even though they had no basis to do so.  No notice of the *lis pendens* was ever served on Plaintiff.

  4. To presumably justify their *lis pendens*, Defendants frame their complaint as if they already have some sort of money judgment against the prior owner.  However, Defendants have no money judgment against the prior owner, and therefore their *lis pendens* is clearly improper.  Nor was there ever any lien on the property prior to its acquisition by Plaintiff.  At the time of the transfer to Westfair, there was no filing that would indicate a dispute as to the title of the

property or a claim that would affect the title to or use of the property, nor had Defendants ever asserted, in public or private, that they claimed title to the property.

5.    Moreover, Plaintiff is informed that Defendants had actually terminated their contract, and any right to the property, back in March 2022.  Please see the annexed letter from Defendants to Diamond Tucker St Property, LLC stating that the contract was terminated (annexed hereto as **EXHIBIT 4**).  Defendants clearly know that their filing of the *lis pendens* is wrong and unlawful, because in their own letter to Diamond Tucker St Property, LLC, they stated that they would first need to obtain a judgment against Diamond Tucker St Property, LLC before they could engage in any enforcement or attachment.  Now, however, despite not having any judgment, they are trying to attach a property owned by a third party.

6.    Further demonstrating that Defendants know that they have no rights in the property, after the letter was sent, Diamond Tucker St Property, LLC apparently sued Defendants in Federal District Court for the District of Connecticut.  Defendants answered in that case, and did not assert any counterclaim or otherwise state that they had any rights in the property.  Thus, Defendants clearly know that they have no right to a *lis pendens*, and their filing of a *lis pendens* was thus maliciously done.

7.    Defendants' malicious *lis pendens* has had its desired effect.  Although we are trying to list the property, as it is a hot market right now and we received notification of a number of interested buyers, Brokers won't list the property and/or express concern that the property cannot be transferred to their clients or other purchasers because of the *lis pendens*, and purchasers will not make any realistic offers on the property because of this potential cloud in the chain of title caused by the *lis pendens*.

8. This is clearly irreparable harm to us. This Court does not need to be told that the real estate market is fickle, and a hot market can easily and quickly fizzle out. The opportunities available to us now may no longer be available even a month from now. Accordingly, Plaintiff desperately needs immediate injunctive relief from this Court.

9. Although Plaintiff attempted to utilize the procedure in Connecticut, Defendants have engaged in dilatory filings there, which while ultimately Plaintiff believes it will prevail on, prevent Plaintiff from lifting this baseless *lis pendens* in the interim. Accordingly, Plaintiff respectfully and humbly comes to this Court, where Defendants can't make any arguments about proper parties or jurisdiction, for injunctive relief.

10. Accordingly, in light of the likelihood of success on the merits, the balance of the equities, and the irreparable harm that is occurring to Plaintiff, it is respectfully requested that the Court grant Plaintiff a temporary restraining order directing Defendants to withdraw their *lis pendens* and directing the Town Clerk for the Town of Easton, CT to vacate and remove the *lis pendens*, and a preliminary injunction enjoining Defendants from filing any future *lis pendens* against the property or otherwise trying to cloud title or interfere with the property's sale. The removal of the *lis pendens* will in no way prevent Defendants from continuing to pursue whatever claims they allege to have, but its continued existence substantially harms Plaintiff, as discussed above.

**WHEREFORE**, it is respectfully requested that Plaintiff's motion for a temporary restraining order and preliminary injunction be denied in its entirety, together with such other, further, and different relief as to this honorable Court may be just and proper.

This declaration is submitted pursuant to 28 U.S.C. §1746.  I declare under penalty of perjury that the foregoing is true and correct.


Executed on August 1, 2024 in Bronx, New York.



GIANNI ZUNIO

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

WESTFAIR LLC,

                                                Civ. A. No. 7:24-cv-5879

                Plaintiff,

                -vs-

KAREN PUPOVIC and ISMET PUPOVIC,

                Defendants.

-------------------------------------------------------------------X

## COMPLAINT

Plaintiff WESTFAIR LLC, as and for its Complaint against KAREN PUPOVIC and ISMET PUPOVIC (collectively "Defendants"), states as follows:

### NATURE OF THE ACTION

1.     This is an action against two malicious and litigious defendants who have improperly used a Connecticut *lis pendens* to harm Plaintiff and prevent the sale of a piece of real property owned by Plaintiff.

### THE PARTIES

2.     Plaintiff WESTFAIR LLC is a New Mexico limited liability company, with its principal place of business located in New Mexico.

3.     Defendants KAREN PUPOVIC and ISMET PUPOVIC are a married couple who upon information and belief live at 3979 State Route 52, Pine Bush, NY 12566.

### JURISDICTION

4.     Each Defendant is subject to the personal jurisdiction of this Court because each Defendant resides within the State of New York, County of Orange.

5.      This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 1983 based on Defendant's violations of the Fifth and Fourteenth Amendments to the United States Constitution.

6.      This Court also has jurisdiction under 28 U.S.C. § 2201 *et. seq.*

7.      Venue is proper because each Defendant resides within this judicial district.

## COMMON FACTUAL ALLEGATIONS

8.      In or about January 2022, Defendants entered into a contract of sale with Diamond Tucker St Property, LLC for the purchase of a piece of real property with an address of 101 Northwood Drive, Easton, CT 06612.

9.      For various reasons, the sale apparently did not close.

10.      In March 2022, Diamond Tucker St Property, LLC sued Defendants for breach of contract in the Federal District Court for the District of Connecticut.

11.      Defendants answered the complaint but did not assert any counterclaims or assert any claim to any interest in the property.

12.      On March 15, 2022, Defendants, through counsel, allegedly sent a letter to Diamond Tucker St Property, LLC declaring that the contract was terminated and demanding a return of the downpayment.

13.      Defendants thereby explicitly expressed their intention not to purchase the property and no claim was made to the property.

14.      In April 2022, the property was conveyed by Diamond Tucker St Property, LLC to another entity, Redemption, LLC.

15.      Nothing had been recorded by Defendants that would give notice of any claim on the property.

16.     No claims to the property had otherwise been made by Defendants.

17.     On or about November 5, 2023, Redemption, LLC transferred the property to Plaintiff.

18.     Again, nothing had been recorded by Defendants that would have given notice of any claim on the property.

19.     Additionally, no claims to the property had otherwise been made by Defendants.

20.     Thereafter, on or about November 20, 2023, Defendants filed a lawsuit against Diamond Tucker St Property, LLC, Redemption, LLC, and Plaintiff seeking compensatory damages against Diamond Tucker St Property, LLC for allegedly tortiously interfering in the sale of its own property.

21.     Furthermore, despite only seeking damages against Diamond Tucker St Property, LLC and not having a judgment against Plaintiff (or the two other defendants), on or about November 20, 2023, Defendants also filed a *lis pendens* against the property.

22.     Defendants filed the *lis pendens*, even though a *lis pendens* can only be filed where the subject matter of the suit itself would affect the title to, or the possession, use or enjoyment of the property.  *See* Connecticut General Statutes § 52-325.

23.     However, Defendants' suit does not legitimately affect the title to, or the possession, use or enjoyment of the property, and instead attempts to pigeonhole in language to that effect so that Defendants could maliciously file a *lis pendens* and tie up Plaintiff's sale of the property.

24.     In their vague and convoluted, difficult-to-understand complaint, Defendants either falsely assert that they presently have a (nonexistent) judgment debt against Diamond Tucker St Property, LLC; or at best for Defendants, giving them all benefit of the doubt, that they are seeking to avoid the transfer to Plaintiff solely to the extent necessary to satisfy any

potential future judgment down the road that they might receive against Diamond Tucker St Property, LLC, which obviously would not be grounds to retroactively nullify the two property transfers or sufficient grounds for the assertion of a *lis pendens*.

25.     Defendants do not have and at no point have ever had any money judgment against Plaintiff, nor does their complaint seek a money judgment against Plaintiff.

26.     Instead, Defendants are attempting to maliciously and baselessly attach and tie up the property prejudgment on the grounds that they may in the future possibly get a judgment against a third-party.

27.     The filing of the *lis pendens* has prevented Plaintiff from selling the property, and has cost Plaintiff anticipated profits and significant damages that continue to this day, which are believed to be in the hundreds of thousands of dollars.

28.     Brokers won't list the property and/or express concern that the property cannot be transferred to their clients or other purchasers, and purchasers will not make any realistic offers on the property because of this potential cloud in the chain of title caused by the *lis pendens*.

29.     Defendants' use of the *lis pendens* has been improper for several reasons: 1) Defendants do not have a judgment and are not creditors; 2) Under the statute, Defendants were required to serve a notice of the *lis pendens* within 30 days of its recording, which they failed to do; 3) Defendants never acquired personal jurisdiction over Plaintiff, and have docket entries of returns marked as "no service."

30.     Although Plaintiff has moved in Connecticut pursuant to Connecticut General Statutes § 52-325a and Connecticut General Statutes § 52-325d to discharge the *lis pendens*, Defendants have now moved to dismiss that proceeding by asserting that Plaintiff doesn't have standing to attempt to discharge the *lis pendens*, thereby creating substantial delays and negating the very purpose of the expedited hearing that is supposed to be available to a party like Plaintiff.

31.     More importantly, even if Plaintiff's motion is granted, there is nothing that would prevent Defendants from filing a new *lis pendens* to once again try to tie up the property.

32.     Accordingly, Plaintiff is suing Defendants here in New York, where Defendants reside and where there is certainly jurisdiction over Defendants, seeking declaratory relief to enjoin the harm caused by Defendants' malicious behavior.

## FIRST CAUSE OF ACTION
**(Declaratory Relief)**

33.     Plaintiff repeats and hereby incorporates each of the above allegations.

34.     Under Conn. Gen. Stat. §52-325, a *lis pendens* may only be filed in (1) actions whose object and purpose is to determine the title or rights of the parties in, to, under or over some particular real property; (2) actions whose object and purpose is to establish or enforce previously acquired interests in real property; and (3) actions which may affect in any manner the title to or interest in real property, notwithstanding the main purpose of the action may be other than to affect the title of such real property.

35.     Defendants' action does not satisfy any of these three requirements, as Defendants' action simply seeks alleged damages against Diamond Tucker St Property, LLC, and Defendants' pigeonholed request to "avoid the transfer to the extent necessary to satisfy the judgment," is not actually a claim that affects title to or interest in the property, but rather simply seeks to ensure that there is an asset from which Defendants might collect a theoretical future money judgment that they might obtain.

36.     This is clearly an improper basis for a *lis pendens*, otherwise every plaintiff in every case would be able to file a *lis pendens* against a defendant's property.

37.     Notwithstanding the fact that Defendants' action does not satisfy any of Conn.

Gen. Stat. §52-325's requirements, Defendants nevertheless filed a *lis pendens* against Plaintiff's property.

38.     Defendants then failed to abide by any of the requirements attendant to the filing of a *lis pendens*, such as serving notice within 30 days or obtaining jurisdiction over Plaintiff.

39.     Defendants have maliciously done so even though they have no rights in the property and no good faith legal basis for the assertion of a *lis pendens*, and have only done so to maliciously prevent Plaintiff from selling the property.

40.     Defendants do not claim in their complaint that they have title to or a potential interest in the property, nor could they since their March 15, 2022, letter stated that they were terminating the purchase agreement relating to the property.

41.     Defendants' bad faith alleged basis for the assertion of a *lis pendens* is their claim in their complaint, which again is difficult to understand but is either 1) a purposefully deceitful claim that they currently possess a judgment debt against third-party Diamond Tucker St Property, LLC – which they do not – or, 2) at best for Defendants, that they are seeking a money judgment against a former owner of the property and are now contending that they can tie up the property with a *lis pendens* because they will potentially seek to undo the transfer of the property to the extent necessary to potentially satisfy a potential money judgment that they might get against a third-party somewhere down the line, neither of which is a valid basis for the assertion of a *lis pendens*.

42.     Accordingly, there is a substantial controversy between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

43.     Therefore, under 28 U.S.C. § 2201, this Court may declare the rights and other

legal relations of any interested party seeking such declaration.

44.     A declaratory judgment is required by this Court to determine the rights and obligations of the parties with respect to the *lis pendens*, and it is respectfully submitted that the Court issue a declaratory judgment stating that Defendants have no right to file any *lis pendens* against the property or otherwise try to cloud title or interfere with the property's sale, and that the Defendants are permanently enjoined from filing any future *lis pendens* against the property or otherwise trying to cloud title or interfere with the property's sale.

## SECOND CAUSE OF ACTION
### (42 U.S.C. § 1983)

45.     Plaintiff repeats and re-alleges each of the above allegations.

46.     Out of a malicious spite to prevent Plaintiff from selling its property, Defendants knowingly and purposely devised a scheme to deprive Plaintiff of its constitutional right to due process under the Fifth and Fourteenth Amendments of the United States Constitution by abusing the state laws of Connecticut.

47.     In particular, Defendants used Connecticut's *lis pendens* statute to place a cloud on the chain of title and effectively prevent sale of the property notwithstanding the fact that Defendants have nothing more than a putative breach of contract case against another party (and essentially nothing more than an interpleader case brought to determine the party to whom the deposit placed upon the property ought to be disbursed), and no interest or right to the property, or claim to any interest or right to the property.

48.     The statute, Conn. Gen. Stat. §52-325, is unconstitutional as used by Defendants.

49.     Defendants, acting under the color of state law, have used the statute as a form of a pre-judgment attachment without providing sufficient due process to Plaintiff to contest the *lis pendens* before it was attached to the property.

50.     Even worse, the *lis pendens* is premised either under a deliberately false claim, or at best for Defendants a clearly legally-insufficient basis.

51.     Although the statute provides for a method to have the *lis pendens* discharged, in the interim, Plaintiff continues to suffer the harm caused by the improper *lis pendens*, and Connecticut does not require the Defendants to post any sort of bond or undertaking to compensate Plaintiff for the harm caused before said *lis pendens* can be discharged through court procedure.

52.     Moreover, Defendants have filed a motion to dismiss seeking nothing more than to delay and prevent Plaintiff from having its proceeding to discharge, thereby negating the very expedited procedure that Conn. Gen. Stat. § 52-352a is intended to provide, and thereby requiring Plaintiff to come to this Court in the hopes of not only undoing the current harm caused by Defendants, but preventing future harm as well.

53.     Thus, the statute, as used by Defendants, deprives Plaintiff of its constitutional right to due process.

54.     Accordingly, injunctive relief is required by this Court directing the cancellation and withdrawal of the *lis pendens* and permanently enjoining Defendants from filing any further *lis pendens* against the property or otherwise trying to cloud title or interfere with the property's sale.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment in its favor against Defendants, jointly and severally, and seeks an order from the Court: Declaring that Defendants have no right to file any *lis pendens* against the property or otherwise try to cloud title or interfere with the property's sale, and permanently enjoining Defendants from filing any future *lis pendens* against the property or otherwise trying to cloud title or interfere with the property's sale; together with

attorney's fees and costs, and such other and further relief as this Court deems just and proper.

Dated: Fresh Meadows, New York
         July 28, 2024

                                         /s/ Jonathan E. Neuman
                                        JONATHAN E. NEUMAN, ESQ.
                                        *Attorney for Plaintiff*
                                        176-25 Union Turnpike, Suite 230
                                        Fresh Meadows, New York 11366
                                        (347) 450-6710
                                        (718) 228-3689 *facsimile*
                                        jnesq@jenesqlaw.com

RETURN DATE: DECEMBER 19, 2023      :      **SUPERIOR COURT**

**KAREN PUPOVIC**      :
**ISMET PUPOVIC**      :      **J.D. OF BRIDGEPORT**

**VS.**      :      **AT BRIDGEPORT**

**DIAMOND TUCKET ST. PROPERTY, LLC**      :
**REDEMPTION, LLC &  WESTFAIR LLC**      :      **NOVEMBER 20, 2023**

## COMPLAINT

**COUNT ONE:** (By the Plaintiffs as Against the Defendant, Diamond Tucker St. Property, LLC)

1.  At all times relevant to this complaint the Plaintiffs, Karen and Ismet Pupovic, were and are a married couple residing in New York.

2.  At all times relevant to this complaint the Defendant, Diamond Tucker St. Property, LLC ("DTS") was a foreign limited liability company organized under the laws of the State of Maryland, and at all times relevant was owned and operated by Sean Fillinich.

3.  At all times relevant to this complaint the Defendant, Redemption, LLC ("Redemption") was a foreign limited liability company organized under the laws of the State of Maryland, and at all times relevant was owned and operated by Sean Fillinich.

4.  In early 2022, and for some time prior thereto, DTS was title owner to certain real property located at 101 Northwood Drive in Easton, Connecticut ("Property").

5.  In early 2022, and for some time prior thereto, DTS was offering the Property for sale.

6.  In early 2022, Plaintiffs expressed interest in, and attempted to purchase, the Property.

7.  As of early 2022 significant equity existed in the Property.

**Maki Law, LLC**
467 Naubuc Avenue · Glastonbury CT 06033 · 860.269.5780 · Facsimile: 860.221.3947
Juris No. 437597

7.     Plaintiffs' attempts to purchase the Property were thwarted by the unlawful and tortious acts of DTS, resulting in the sale not consummating and Plaintiffs sustaining significant harms and losses therefrom.

8.     On or about April 24, 2020, DTS conveyed the Property to the Defendant, Redemption, for no consideration.

9.     The aforementioned transfer of title ownership for no consideration rendered DTS unable to meet its financial obligations, specifically its legal liability to the Plaintiffs.

10.     The aforementioned transfer of title ownership for no consideration was made with fraudulent intent to shield the Property and its value from the Plaintiffs' claims against DTS.

11.     Because of the aforementioned transfer of title to the Property, DTS is unable to pay its debt to the Plaintiffs.

**COUNT TWO: (By the Plaintiffs as Against the Defendant, Redemption, LLC)**

1.     At all times relevant to this complaint the Plaintiffs, Karen and Ismet Pupovic, were and are a married couple residing in New York.

2.     At all times relevant to this complaint the Defendant, Diamond Tucker St. Property, LLC ("DTS") was a foreign limited liability company organized under the laws of the State of Maryland, and at all times relevant was owned and operated by Sean Fillinich.

**Maki Law, LLC**
467 Naubuc Avenue · Glastonbury CT 06033 · 860.269.5780 · Facsimile: 860.221.3947
Juris No. 437597

3.    At all times relevant to this complaint the Defendant, Redemption, LLC ("Redemption") was a foreign limited liability company organized under the laws of the State of Maryland, and at all times relevant was owned and operated by Sean Fillinich.

4.    In early 2022, and for some time prior thereto, DTS was title owner to certain real property located at 101 Northwood Drive in Easton, Connecticut ("Property").

5.    In early 2022, and for some time prior thereto, DTS was offering the Property for sale.

6.    In early 2022, Plaintiffs expressed interest in, and attempted to purchase, the Property.

7.    As of early 2022 significant equity existed in the Property.

8.    Plaintiffs' attempts to purchase the Property were thwarted by the unlawful and tortious acts of DTS, resulting in the sale not consummating and Plaintiffs sustaining significant harms and losses therefrom.

9.    On or about April 24, 2020, DTS conveyed the Property to the Defendant, Redemption, for no consideration.

10.   At some time prior to the aforementioned conveyance of the Property, DTS, Redemption and/or their mutual owner, Sean Fillinich, were placed on notice that Plaintiffs claimed significant damages against DTS for its unlawful conduct, and that a legal claim was being made or would be imminently made against DTS on Plaintiffs' behalf.

11.   The aforementioned transfer of title ownership for no consideration rendered DTS unable to meet its financial obligations, specifically its legal liability to the Plaintiffs.

12.   The aforementioned transfer of title ownership for no consideration was made with fraudulent intent to shield the Property and its value from the Plaintiffs' legal claims.

·3·

13.     Because of the aforementioned transfer of title to the Property, DTS is unable to pay its debt to the Plaintiffs.

14.     The Defendant, Redemption, is the recipient of the fraudulently conveyed property, and has unjustly benefitted from said transfer.

**COUNT THREE: (By the Plaintiffs as Against the Defendant, Westfair LLC)**

1.      At all times relevant to this complaint the Plaintiffs, Karen and Ismet Pupovic, were and are a married couple residing in New York.

2.      At all times relevant to this complaint the Defendant, Diamond Tucker St. Property, LLC ("DTS") was a foreign limited liability company organized under the laws of the State of Maryland, and at all times relevant was owned and operated by Sean Fillinich.

3.      At all times relevant to this complaint the Defendant, Redemption, LLC ("Redemption") was a foreign limited liability company organized under the laws of the State of Maryland, and at all times relevant was owned and operated by Sean Fillinich.

4.      Upon information and belief, since at least November 16, 2023, the Defendant, Westfair LLC ("Westfair") is an entity with a principal place of business at 101 Northwood Drive in Easton, Connecticut.

5.      In early 2022, and for some time prior thereto, DTS was title owner to certain real property located at 101 Northwood Drive in Easton, Connecticut ("Property").

6.      In early 2022, and for some time prior thereto, DTS was offering the Property for sale.

7.      In early 2022, Plaintiffs expressed interest in, and attempted to purchase, the Property.

·4·

8.    As of early 2022 significant equity existed in the Property.

9.    Plaintiffs' attempts to purchase the Property were thwarted by the unlawful and tortious acts of DTS, resulting in the sale not consummating and Plaintiffs sustaining significant harms and losses therefrom.

10.   On or about April 24, 2020, DTS conveyed the Property to the Defendant, Redemption, for no consideration (the "First Transfer").

11.   At some time prior to the First Transfer, DTS, Redemption, Westfair and/or their mutual owner, Sean Fillinich, were placed on notice that Plaintiffs claimed significant damages against DTS for its unlawful conduct, and that a legal claim was being made or would be imminently made against DTS on Plaintiffs' behalf.

12.   The First Transfer rendered DTS unable to meet its financial obligations, specifically its legal liability to the Plaintiffs.

13.   The First Transfer was made with fraudulent intent to shield the Property and its value from the Plaintiffs' legal claims.

14.   Because of the First Transfer of title to the Property, DTS is unable to pay its debt to the Plaintiffs.

15.   The Defendant, Redemption, was the recipient of the fraudulently conveyed property through the First Transfer, and had unjustly benefitted from said transfer.

16.   On or about November 5, 2023, Redemption conveyed the Property to the Defendant, Westfair, for nominal consideration (the "Second Transfer").

·5·

17.    At some time prior to the Second Transfer, DTS, Redemption, Westfair and/or their mutual owner, Sean Fillinich, were placed on notice that Plaintiffs claimed significant damages against DTS for its unlawful conduct, and that a legal claim was being made or would be imminently made against DTS on Plaintiffs' behalf.

18.    The Second Transfer rendered DTS and/or Redemption unable to meet DTS's financial obligations, specifically its legal liability to the Plaintiffs.

19.    The Second Transfer was made with fraudulent intent to shield the Property and its value from the Plaintiffs' legal claims.

20.    Because of the First and Second Transfers of title to the Property, DTS is unable to pay its debt to the Plaintiffs.

21.    The Defendant, Westfair, is the recipient of the fraudulently conveyed property through the Second Transfer, and has unjustly benefitted from said transfer.

**Maki Law, LLC**
467 Naubuc Avenue · Glastonbury CT 06033 · 860.269.5780 · Facsimile: 860.221.3947
Juris No. 437597

**WHEREFORE,** the Plaintiffs claim and demand:

1.    Compensatory damages;

2.    Costs of suit;

3.    Avoidance of the transfers of 101 Northwood Drive, Easton CT to the extent

       necessary to pay Plaintiffs' judgment in full pursuant to C.G.S. 52-552h;

4.    Attachment of 101 Northwood Drive, Easton CT in an amount equal to Plaintiffs'

       judgment pursuant to C.G.S. 52-552h;

5.    An injunction against any further transfer of 101 Northwood Drive, Easton CT

       pending resolution of the instant lawsuit;

6.    Such other relief deemed fair, just and reasonable.


                              THE PLAINTIFFS


                              _____
                              Brennen C. Maki, of
                              Maki Law, LLC
                              -Their Attorneys-


·7·

**RETURN DATE: DECEMBER 19, 2023**      :      **SUPERIOR COURT**

**KAREN PUPOVIC**      :
**ISMET PUPOVIC**      :      **J.D. OF BRIDGEPORT**

**VS.**      :      **AT BRIDGEPORT**

**DIAMOND TUCKET ST. PROPERTY, LLC**      :
**REDEMPTION, LLC**      :
**WESTFAIR, LLC**      :      **NOVEMBER 20, 2023**

<u>**AMOUNT IN DEMAND**</u>

     The amount in demand is in excess of FIFTEEN THOUSAND DOLLARS ($15,000.00)

exclusive of costs and interest.

THE PLAINTIFFS

BY:      _____
         Brennen C. Maki, of
         Maki Law, LLC
         -Their Attorneys

**Maki Law**, LLC
467 Naubuc Avenue · Glastonbury CT 06033 · 860.269.5780 · Facsimile: 860.221.3947
Juris No. 437597

VOL706 Pg 839
RECORDED 11/21/2023  11:07:54 AM
DEBORAH SZEGEDI
TOWN CLERK EASTON CT

After recording, please return to:
Maki Law, LLC
467 Naubuc Avenue
Glastonbury, CT 06033

*Return to: Attorney Brennen Maki, Maki Law, LLC, 467 Naubuc Ave., Glastonbury, CT 06033*

**RETURN DATE: DECEMBER 19, 2023**  :  ...IOR COURT

**KAREN PUPOVIC**
**ISMET PUPOVIC**  :  ... OF BRIDGEPORT

VS.  :  ...T BRIDGEPORT

**DIAMOND TUCKER ST. PROPERTY, LLC**
**REDEMPTION, LLC AND WESFAIR LLC**  :  **NOVEMBER 20, 2023**

*ADDRESSE UNKNOWN*

<u>NOTICE OF LIS...  ...S</u>

Notice is hereby given of the pendency of a civil action brought by the above-named Plaintiffs against the defendants, DIAMOND TUCKER ST. PROPERTY, LLC, REDEMPTION, LLC and WESTFAIR LLC by writ dated November 20, 2023 returnable to the Superior Court to be held in Bridgeport, within and for the Judicial District of Bridgeport, on December 19, 2023, which action was brought based in the fraudulent transfers of real property known as 101 Northwood Drive, Easton.

The property at issue is known as 101 Northwood Drive, Easton, CT 06612 is further described as:

All that certain piece or parcel of land with the buildings and improvements thereon, situated in the Town of Easton, County of Fairfield and State of Connecticut, known as Lot No. 4 as shown on "Lot Line Revision Plan, Lot 2 and 4, Northwood Drive, Easton, Conn. Scale 1" – 40', April 17, 1988 Rev. 10/18/88 and 1/9/88" Certified by Larry Edwards being Map No. 1138 on the Easton Land Records.

Dated at Glastonbury, Connecticut, this 20th day of November, 2023.

THE PLAINTIFFS,
KAREN PUPOVIC and
ISMET PUPOVIC

Brennen C. Maki, of
Maki Law, LLC
-Their Attorneys-

THIS IS TO CERTIFY That this is a true copy of the original document dated November 26, 2023 and filed or recorded in the records of the Town of Easton, CT in Volume 706 Page 839 on November 21, 2023

ATTEST

SEAL

_____
Assistant Town Clerk

CSM
408

ATTEST: A TRUE COPY

ROBERT E. CARLSON JR.
STATE MARSHAL

101

**SUMMONS - CIVIL**
JD-CV-1  Rev. 2-22
C.G.S. §§ 51-346, 51-347, 51-349, 51-350, 52-45a, 52-48, 52-259;
P.B. §§ 3-1 through 3-21, 8-1, 10-13

| For information on ADA accommodations, contact a court clerk or go to: www.jud.ct.gov/ADA. | STATE OF CONNECTICUT SUPERIOR COURT www.jud.ct.gov |
|---|---|

**Instructions are on page 2.**

☐ Select if amount, legal interest, or property in demand, not including interest and costs, is LESS than $2,500.

☒ Select if amount, legal interest, or property in demand, not including interest and costs, is $2,500 or MORE.

☒ Select if claiming other relief in addition to, or in place of, money or damages.

**TO: Any proper officer**
By authority of the State of Connecticut, you are hereby commanded to make due and legal service of this summons and attached complaint.

| Address of court clerk (Number, street, town and zip code) | Telephone number of clerk | Return Date (Must be a Tuesday) |
|---|---|---|
| 1061 MAIN STREET, BRIDGEPORT CT 06604 | (203) 579 – 6527 | DECEMBER 19, 2023 |

| ☒ Judicial District | G.A. | At (City/Town) | Case type code (See list on page 2) |
|---|---|---|---|
| ☐ Housing Session | ☐ Number: | BRIDGEPORT | Major: **T**    Minor: **90** |

**For the plaintiff(s) enter the appearance of:**

| Name and address of attorney, law firm or plaintiff if self-represented (Number, street, town and zip code) | Juris number (if attorney or law firm) |
|---|---|
| MAKI LAW, LLC, 467 NAUBUC AVE GLASTONBURY CT 06033 | 437597 |

| Telephone number | Signature of plaintiff (if self-represented) |
|---|---|
| (860) 269 – 5780 | |

| The attorney or law firm appearing for the plaintiff, or the plaintiff if self-represented, agrees to accept papers (service) electronically in this case under Section 10-13 of the Connecticut Practice Book.  ☒ Yes  ☐ No | E-mail address for delivery of papers under Section 10-13 of the Connecticut Practice Book (if agreed) brennen@makilawct.com |
|---|---|

| Parties | Name (Last, First, Middle Initial) and address of each party (Number; street; P.O. Box; town; state; zip; country, if not USA) | |
|---|---|---|
| **First plaintiff** | Name: PUPOVIC, KAREN  Address: 3979 STATE ROUTE 52, PINE BUSH NY 12566 | P-01 |
| **Additional plaintiff** | Name: PUPOVIC, ISMET  Address: 3979 STATE ROUTE 52, PINE BUSH NY 12566 | P-02 |
| **First defendant** | Name: DIAMOND TUCKER ST. PROPERTY, LLC  Address: C/O AGENT SEAN FILLINICH, 9825 OLD SOLOMANS ROAD, OWINGS MD 20736 | D-01 |
| **Additional defendant** | Name: REDEMPTION, LLC  Address: C/O AGENT SEAN FILLINICH, 10738 TUCKER ST, REAR BLDG, BELTSVILLE MD 20705 | D-02 |
| **Additional defendant** | Name: WESTFAIR, LLC, 101 NORTHWOOD DRIVE EASTON CT  Address: C/O AGENT SEAN FILLINICH, 9825 OLD SOLOMANS RD, ( | |
| **Additional defendant** | Name:  Address: | |

**ADDRESSE UNKNOWN**

| Total number of plaintiffs: 2 | Total number of defendants: 3 | |
|---|---|---|

**Notice to each defendant**

1. **You are being sued.** This is a summons in a lawsuit. The complaint attached states the claims the plaintiff is making against you.
2. To receive further notices, you or your attorney must file an *Appearance* (form JD-CL-12) with the clerk at the address above. Generally, it must be filed on or before the second day after the Return Date. The Return Date is not a hearing date. You do not have to come to court on the Return Date unless you receive a separate notice telling you to appear.
3. If you or your attorney do not file an *Appearance* on time, a default judgment may be entered against you. You can get an *Appearance* form at the court address above, or on-line at https://jud.ct.gov/webforms/.
4. If you believe that you have insurance that may cover the claim being made against you in this lawsuit, you should immediately contact your insurance representative. Other actions you may take are described in the Connecticut Practice Book, which may be found in a superior court law library or on-line at https://www.jud.ct.gov/pb.htm.
5. If you have questions about the summons and complaint, you should talk to an attorney.
   **The court staff is not allowed to give advice on legal matters.**

| Date | Signed (Sign and select proper box) | ☒ Commissioner of Superior Court | Name of person signing |
|---|---|---|---|
| 11/20/2023 | | ☐ Clerk | BRENNEN MAKI, ESQ. |

| If this summons is signed by a Clerk: | For Court Use Only |
|---|---|
| a. The signing has been done so that the plaintiff(s) will not be denied access to the courts. | File Date |
| b. It is the responsibility of the plaintiff(s) to ensure that service is made in the manner provided by law. | |
| c. The court staff is not permitted to give any legal advice in connection with any lawsuit. | ATTEST: X TRUE COPY |
| d. The Clerk signing this summons at the request of the plaintiff(s) is not responsible in any way for any errors or omissions in the summons, any allegations contained in the complaint, or the service of the summons or complaint. | ROBERT E. CARLSON JR. STATE MARSHAL |

CSM 408

| I certify I have read and understand the above: | Signed (Self-represented plaintiff) | Date | Docket Number |
|---|---|---|---|

| Print Form | Page 1 of 2 | Reset Form |
|---|---|---|

RETURN DATE: DECEMBER 19, 2023    :    SUPERIOR COURT

KAREN PUPOVIC    :
ISMET PUPOVIC    :    J.D. OF BRIDGEPORT

VS.    :    AT BRIDGEPORT

DIAMOND TUCKER ST. PROPERTY, LLC    :
REDEMPTION, LLC &  WESTFAIR LLC    :    NOVEMBER 20, 2023

## COMPLAINT

<u>COUNT ONE</u>: (By the Plaintiffs as Against the Defendant, Diamond Tucker St. Property, LLC)

1.    At all times relevant to this complaint the Plaintiffs, Karen and Ismet Pupovic, were and are a married couple residing in New York.

2.    At all times relevant to this complaint the Defendant, Diamond Tucker St. Property, LLC ("DTS") was a foreign limited liability company organized under the laws of the State of Maryland, and at all times relevant was owned and operated by Sean Fillinich.

3.    At all times relevant to this complaint the Defendant, Redemption, LLC ("Redemption") was a foreign limited liability company organized under the laws of the State of Maryland, and at all times relevant was owned and operated by Sean Fillinich.

4.    In early 2022, and for some time prior thereto, DTS was title owner to certain real property located at 101 Northwood Drive in Easton, Connecticut ("Property").

5.    In early 2022, and for some time prior thereto, DTS was offering the Property for sale.

6.    In early 2022, Plaintiffs expressed interest in, and attempted to purchase, the Property.

7.    As of early 2022 significant equity existed in the Property.

·1·

**Maki Law, LLC**
467 Naubuc Avenue · Glastonbury CT 06033 · 860.269.5780 · Facsimile: 860.221.3947
Juris No. 437597

7.     Plaintiffs' attempts to purchase the Property were thwarted by the unlawful and tortious acts of DTS, resulting in the sale not consummating and Plaintiffs sustaining significant harms and losses therefrom.

8.     On or about April 24, 2020, DTS conveyed the Property to the Defendant, Redemption, for no consideration.

9.     The aforementioned transfer of title ownership for no consideration rendered DTS unable to meet its financial obligations, specifically its legal liability to the Plaintiffs.

10.    The aforementioned transfer of title ownership for no consideration was made with fraudulent intent to shield the Property and its value from the Plaintiffs' claims against DTS.

11.    Because of the aforementioned transfer of title to the Property, DTS is unable to pay its debt to the Plaintiffs.

**COUNT TWO: (By the Plaintiffs as Against the Defendant, Redemption, LLC)**

1.     At all times relevant to this complaint the Plaintiffs, Karen and Ismet Pupovic, were and are a married couple residing in New York.

2.     At all times relevant to this complaint the Defendant, Diamond Tucker St. Property, LLC ("DTS") was a foreign limited liability company organized under the laws of the State of Maryland, and at all times relevant was owned and operated by Sean Fillinich.

**Maki Law, LLC**
467 Naubuc Avenue · Glastonbury CT 06033 · 860.269.5780 · Facsimile: 860.221.3947
Juris No. 437597

3.   At all times relevant to this complaint the Defendant, Redemption, LLC ("Redemption") was a foreign limited liability company organized under the laws of the State of Maryland, and at all times relevant was owned and operated by Sean Fillinich.

4.   In early 2022, and for some time prior thereto, DTS was title owner to certain real property located at 101 Northwood Drive in Easton, Connecticut ("Property").

5.   In early 2022, and for some time prior thereto, DTS was offering the Property for sale.

6.   In early 2022, Plaintiffs expressed interest in, and attempted to purchase, the Property.

7.   As of early 2022 significant equity existed in the Property.

8.   Plaintiffs' attempts to purchase the Property were thwarted by the unlawful and tortious acts of DTS, resulting in the sale not consummating and Plaintiffs sustaining significant harms and losses therefrom.

9.   On or about April 24, 2020, DTS conveyed the Property to the Defendant, Redemption, for no consideration.

10.  At some time prior to the aforementioned conveyance of the Property, DTS, Redemption and/or their mutual owner, Sean Fillinich, were placed on notice that Plaintiffs claimed significant damages against DTS for its unlawful conduct, and that a legal claim was being made or would be imminently made against DTS on Plaintiffs' behalf.

11.  The aforementioned transfer of title ownership for no consideration rendered DTS unable to meet its financial obligations, specifically its legal liability to the Plaintiffs.

12.  The aforementioned transfer of title ownership for no consideration was made with fraudulent intent to shield the Property and its value from the Plaintiffs' legal claims.

·3·

13.     Because of the aforementioned transfer of title to the Property, DTS is unable to pay its debt to the Plaintiffs.

14.     The Defendant, Redemption, is the recipient of the fraudulently conveyed property, and has unjustly benefitted from said transfer.

**COUNT THREE:** (By the Plaintiffs as Against the Defendant, Westfair LLC)

1.     At all times relevant to this complaint the Plaintiffs, Karen and Ismet Pupovic, were and are a married couple residing in New York.

2.     At all times relevant to this complaint the Defendant, Diamond Tucker St. Property, LLC ("DTS") was a foreign limited liability company organized under the laws of the State of Maryland, and at all times relevant was owned and operated by Sean Fillinich.

3.     At all times relevant to this complaint the Defendant, Redemption, LLC ("Redemption") was a foreign limited liability company organized under the laws of the State of Maryland, and at all times relevant was owned and operated by Sean Fillinich.

4.     Upon information and belief, since at least November 16, 2023, the Defendant, Westfair LLC ("Westfair") is an entity with a principal place of business at 101 Northwood Drive in Easton, Connecticut.

5.     In early 2022, and for some time prior thereto, DTS was title owner to certain real property located at 101 Northwood Drive in Easton, Connecticut ("Property").

6.     In early 2022, and for some time prior thereto, DTS was offering the Property for sale.

7.     In early 2022, Plaintiffs expressed interest in, and attempted to purchase, the Property.

·4·

**Maki Law, LLC**
467 Naubuc Avenue · Glastonbury CT 06033 · 860.269.5780 · Facsimile: 860.221.3947
Juris No. 437597

8. As of early 2022 significant equity existed in the Property.

9. Plaintiffs' attempts to purchase the Property were thwarted by the unlawful and tortious acts of DTS, resulting in the sale not consummating and Plaintiffs sustaining significant harms and losses therefrom.

10. On or about April 24, 2020, DTS conveyed the Property to the Defendant, Redemption, for no consideration (the "First Transfer").

11. At some time prior to the First Transfer, DTS, Redemption, Westfair and/or their mutual owner, Sean Fillinich, were placed on notice that Plaintiffs claimed significant damages against DTS for its unlawful conduct, and that a legal claim was being made or would be imminently made against DTS on Plaintiffs' behalf.

12. The First Transfer rendered DTS unable to meet its financial obligations, specifically its legal liability to the Plaintiffs.

13. The First Transfer was made with fraudulent intent to shield the Property and its value from the Plaintiffs' legal claims.

14. Because of the First Transfer of title to the Property, DTS is unable to pay its debt to the Plaintiffs.

15. The Defendant, Redemption, was the recipient of the fraudulently conveyed property through the First Transfer, and had unjustly benefitted from said transfer.

16. On or about November 5, 2023, Redemption conveyed the Property to the Defendant, Westfair, for nominal consideration (the "Second Transfer").

Maki Law, LLC
467 Naubuc Avenue • Glastonbury CT 06033 • 860.269.5780 • Facsimile: 860.221.3947
Juris No. 437597

17. At some time prior to the Second Transfer, DTS, Redemption, Westfair and/or their mutual owner, Sean Fillinich, were placed on notice that Plaintiffs claimed significant damages against DTS for its unlawful conduct, and that a legal claim was being made or would be imminently made against DTS on Plaintiffs' behalf.

18. The Second Transfer rendered DTS and/or Redemption unable to meet DTS's financial obligations, specifically its legal liability to the Plaintiffs.

19. The Second Transfer was made with fraudulent intent to shield the Property and its value from the Plaintiffs' legal claims.

20. Because of the First and Second Transfers of title to the Property, DTS is unable to pay its debt to the Plaintiffs.

21. The Defendant, Westfair, is the recipient of the fraudulently conveyed property through the Second Transfer, and has unjustly benefitted from said transfer.

**Maki Law, LLC**
467 Naubuc Avenue · Glastonbury CT 06033 · 860.269.5780 · Facsimile: 860.221.3947
Juris No. 437597

**WHEREFORE,** the Plaintiffs claim and demand:

1. Compensatory damages;

2. Costs of suit;

3. Avoidance of the transfers of 101 Northwood Drive, Easton CT to the extent necessary to pay Plaintiffs' judgment in full pursuant to C.G.S. 52-552h;

4. Attachment of 101 Northwood Drive, Easton CT in an amount equal to Plaintiffs' judgment pursuant to C.G.S. 52-552h;

5. An injunction against any further transfer of 101 Northwood Drive, Easton CT pending resolution of the instant lawsuit;

6. Such other relief deemed fair, just and reasonable.

THE PLAINTIFFS

Brennen C. Maki, of
Maki Law, LLC
-Their Attorneys-

ATTEST: A TRUE COPY

CSM
408

ROBERT E. CARLSON JR.
STATE MARSHAL

·7·

**Maki Law, LLC**
467 Naubuc Avenue · Glastonbury CT 06033 · 860.269.5780 · Facsimile: 860.221.3947
Juris No. 437597

RETURN DATE: DECEMBER 19, 2023  :  SUPERIOR COURT

KAREN PUPOVIC     :
ISMET PUPOVIC     :  J.D. OF BRIDGEPORT

VS.         :  AT BRIDGEPORT

DIAMOND TUCKET ST. PROPERTY, LLC :
REDEMPTION, LLC    :
WESTFAIR, LLC     :  NOVEMBER 20, 2023

### AMOUNT IN DEMAND

The amount in demand is in excess of FIFTEEN THOUSAND DOLLARS ($15,000.00) exclusive of costs and interest.


THE PLAINTIFFS


BY: _____
Brennon C. Maki, of
Maki Law, LLC
-Their Attorneys


CSM
408

ATTEST: A TRUE COPY
_____
ROBERT E. CARLSON JR.
STATE MARSHAL

-8-

Robert E. Curlson JD
Stak mer mor
Po Box 8132
Berlin ct 06037



7021 2720 0002 8211 8144

**Retail**



UNITED STATES
POSTAL SERVICE®

**RDC 99**



06612

U.S. POSTAGE PAID
FCM LETTER
BERLIN, CT 06037
NOV 22, 2023

**$8.80**

R2304M111918-06

*ADDRESSE UNKNOWN*

Westfair, LLC
101 Northwood Drive
Easton, CT   06612

*ADDRESSE UNKNOWN*

06612-1951  C/o  Thau Securely

# GCGH Gambardella, Cipriano Gottlieb & Hathaway PC

Attorneys at Law

60 WASHINGTON AVENUE, SUITE 104, HAMDEN, CONNECTICUT 06518

TELEPHONE (203) 288-1333
FACSIMILE: (203) 230-4917

John L. Cipriano, Jr.
William V. Gambardella                                          of Counsel
Ian G. Gottlieb                                                 Alba Doto (admitted in Massachusetts)
Keith A. Hathaway
Nicole J. Barillaro (also admitted in New York)
Ian C. Wagemaker
David E. Rosenberg

March 15, 2022

Diamond Tucker St Property, LLC          Diamond Tucker St Property, LLC
9825 Old Solomans Island Road            10738 Tucker Street
Owings, MD 20736                         Beltsville, MD 20705
ATTN: Sean Filinich                      ATTN: Sean Filinich

Mr. Sean Filinich                        Felicia B. Watson, Esq.
1820 N. Herndon Street                   10 Spruce Street
Arlington, VA 22201                      Southport, CT 06890

Divine Realty, LLC                       William Raveis Real Estate, Inc.
82 Bank Street                           47 Riverside Avenue
Seymour, CT 06483                        Westport, CT 06880
ATTN: Joel Matson                        ATTN: Meredith Cohen

Re:    101 Northwood Drive, Easton, CT 06612

Ladies and Gentlemen,

Please be advised that I represent Ismet Pupovic, the purchaser of the above referenced property, and his wife, Karen Pupovic, (the "Buyers") pursuant to a certain purchase and sale contract dated on or about January 13, 2022 (the "Contract"). As an initial concern, it is my understanding that Diamond Tucker St Property, LLC (the "Seller") has terminated its engagement of Attorney Felicia B. Watson, who remains involved in this transaction as the holder of the earnest money deposit in the amount of $90,000.00. If the Seller has retained new counsel, please forward a copy of this letter to them and notify me who that new counsel is.

First and foremost, the purpose of this correspondence is to confirm that going forward, all communications regarding the Buyers are to be addressed to my attention exclusively, any future communications to the Buyers directly will be considered as harassment. In regards to the substance of the Contract, the Seller is in material breach of the terms of the Contract as a result of their failure to convey good and clean title to the Property by failing, refusing and neglecting to provide a valid tax identification number for the Seller. My clients have received a number of communications from the Seller erroneously asserting an

60 Washington Ave. Hamden, Connecticut 06518
telephone: 203.288.1333 facsimile: 203.230.4917 email: david@gcghlaw.com
website: www.gcghlaw.com

exemption for their compliance pursuant to Connecticut General Statutes §12-497. Notwithstanding the Seller's opinions to the contrary, the Conveyance Tax Form proscribed by the Department of Revenue Services requires that a valid taxpayer identification number for the Seller must be included on the form. Although a Town Clerk may not refuse to record a deed from an individual grantor submitted without such a taxpayer identification number, the return is nevertheless defective .In the case of an LLC or other business entity, the town clerk MUST refuse to record a deed without a valid employer identification number thereon. Furthermore, as a representative of the title company, a defective conveyance is not a conveyance at all and therefore, the Seller is in material breach of the Contract.

Based upon the vitriolic and aggressive efforts of the Seller to disparage anyone who would not accept their mistaken legal opinion, there appears to be some nefarious reason behind the Seller's conduct. It is also worth noting that the Seller has failed, refused, and neglected to provide a valid 1099 IRS Form or Seller's Affidavit pursuant to the Foreign Investment in Real Property Tax Act. My clients are not interested in pursuing claims for the Seller's malfeasance, if that can be avoided, rather, the purpose of this correspondence is to terminate the Contract, return the deposit to the Buyers and the parties can go their separate ways free of any further obligations. Attached hereto is a form Termination of Contract to be signed by the Seller within 7 calendar days and returned to my attention on or before March 23, 2022. If the Seller objects or fails to comply for any reason, I have been authorized to commence legal proceedings and pursue all remedies available. Please note that in addition to the return of the Buyer's earnest money deposit and their consequential damages, a separate count will be asserted against Attorney Watson solely for purposes of obtaining an Interpleader claim. Any recovery from such a judgment would be enforceable against the Seller and any property owned by them, including the subject Property.

I trust that you will understand the significance of this correspondence and govern yourself accordingly. If you have any additional questions or concerns, please do not hesitate to contact me forthwith.

Respectfully,

David E. Rosenberg

Enclosure

60 Washington Ave. Hamden, Connecticut 06518
telephone: 203.288.1333 facsimile: 203.230.4917 email: david@gcghlaw.com
website: www.gcghlaw.com

## TERMINATION OF REAL ESTATE CONTRACT

BUYER:     Ismet Pupovic

SELLER:    Diamond Tucker St Property, LLC

PROPERTY:  101 Northwood Drive, Easton, CT 06612


The above reference Buyer and Seller hereby Terminate the original Purchase Contract dated on or about January 13, 0222 (the "Contract") for the above referenced Property.

1)     The Buyer hereby unconditionally waives and releases any claim against the Seller arising out of the Contract.

2)     The Seller hereby unconditionally waives and releases any claim against the Buyer arising out of the Contract.

3)     The Buyer and Seller hereby agree that the deposit, earnest money or other monies held by Attorney Felicia B. Watson, with regard to the purchase and sale of the above referenced property, in the amount of $90,000.00, shall be distributed as follows: $90,000.00 to the Buyer and $0.00 to the Seller.

4)     Upon execution of this Termination and the refund of the deposit monies, the Contract shall be null and void and unenforceable against any party.


_____     _____
Seller – Diamond Tucker St Property, LLC     Buyer – Ismet Pupovic
By:     Date:
Date:

60 Washington Ave. Hamden, Connecticut 06518
telephone: 203.288.1333 facsimile: 203.230.4917 email: david@gcghlaw.com
website: www.gcghlaw.com